[No. B029458. Second Dist., Div. Seven. Feb. 16, 1990.]

SADE SHOE COMPANY, INC., Plaintiff and Appellant, v.
OSCHIN & SNYDER et al., Defendants and Respondents.

**COUNSEL**

Richard K. Kudo for Plaintiff and Appellant.

Rubin & Rahe, Kenneth B. Goodfried and Ken Nathanson for Defendants and Respondents.

**O**PINION

**JOHNSON, J.**—Plaintiff Sade Shoe Company, Inc. (Sade) appeals from the summary judgment entered in its action against respondents Oschin & Snyder and Oschin & Snyder II (collectively referred to as Oschin). On appeal, Sade argues the trial court erroneously held its action was barred by the statute of limitations. We disagree. We further hold the trial court properly denied Sade's request to substitute its directors as the plaintiffs in this action. The judgment is affirmed.

## STATEMENT OF FACTS AND PROCEEDINGS BELOW

The material facts are undisputed. On September 16, 1982, Sade's causes of action for interference with prospective business advantage and interference with contractual relations against Oschin accrued. On October 1, 1982, Sade's corporate powers were suspended by the Secretary of State pursuant to Revenue and Taxation Code sections 23301 and 23301.5 for failing to file tax returns, to pay taxes and failing to file a statement by a domestic stock corporation (the Domestic Stock Statement).[1]

On October 15, Sade filed its tax return and paid its taxes. On November 1, 1982, Sade filed a Domestic Stock Statement.

On December 23, the Secretary of State informed Sade it would waive the $250 penalty for failing to timely file the Domestic Stock Statement. The Secretary of State also stated the Franchise Tax Board would be instructed to waive the penalty. Sade was told the waiver would take approximately 90 days.

On December 30, 1982, Sade filed its complaint against Oschin. At that time, Sade continued to owe the state $90.85 in penalties and interest.

The statute of limitations ran out on September 15, 1984. On March 31, 1987, Oschin moved for summary judgment arguing the statute of limitations expired during Sade's corporate suspension.

On April 10, 1987, Sade obtained a certificate of revivor. On April 22, 1987, Sade opposed the motion for summary judgment. In opposing the motion, Sade requested permission to substitute the directors of Sade as the plaintiffs.

---

[1] All statutory references are to the Revenue and Taxation Code unless we specify otherwise.

The trial court granted the motion for summary judgment. Sade timely appealed.

## DISCUSSION

### I. *Sade Did Not Substantially Comply With Section 23305 and, Therefore, Did Not Revive Its Corporate Powers Prior to Accrual of the Statute of Limitations.*

■ Sade argues it substantially complied with the requirements necessary to obtain a revivor of its corporate powers before expiration of the statute of limitations and, therefore, it is inequitable to dismiss its action. Although we agree substantial compliance may restore a corporation's powers to sue and defend itself, we conclude there was no substantial compliance here.

Section 23301 provides: "[T]he corporate powers, rights and privileges of a domestic taxpayer, may be suspended, and the exercise of the corporate powers, rights and privileges of a foreign taxpayer in this state may be forfeited if any of the following conditions occur:

"(a) If any tax, penalty, or interest, or any portion thereof, . . . is not paid on or before 6 p.m. on the last day of the 12th month after the close of the income year.

"(b) If any tax, penalty, or interest, or any portion thereof, due and payable upon notice and demand from the Franchise Tax Board, or due and payable under Section 25936, is not paid on or before 6 p.m. on the last day of the 11th month following the date following the date of the tax.

"(c) If any liability, or any portion thereof, which is due and payable under Article 5 (commencing with Section 18681) of Chapter 18 of Part 10, is not paid on or before 6 p.m. on the last day of the 11th month following the date that the tax liability is due and payable."

Section 23301.5 provides "[T]he corporate powers, rights and privileges of a domestic corporation may be suspended, and the exercise of the corporate powers, rights and privileges of a foreign taxpayer in this state may be forfeited if a taxpayer fails to file a return."

A corporation which has its powers suspended pursuant to these sections lacks the legal capacity to prosecute or defend a civil action during its suspension. (See *ABA Recovery Services, Inc.* v. *Konold* (1988) 198 Cal.App.3d 720, 724 [244 Cal.Rptr. 27]; *Schwartz* v. *Magyar House, Inc.*

(1959) 168 Cal.App.2d 182, 188 [335 P.2d 487].) Accordingly, when a suspended corporation commences an action during its suspension, the statute of limitations continues to run. (*ABA Recovery Services, Inc.* v. *Konold, supra,* 198 Cal.App.3d at p. 725; *Welco Construction, Inc.* v. *Modulux, Inc.* (1975) 47 Cal.App.3d 69, 74 [120 Cal.Rptr. 572].)

A suspended corporation may revive its corporate powers by complying with the requirements set forth in section 23305 which provides: "Any taxpayer which has suffered the suspension or forfeiture provided for in Section 23301 or Section 23301.5 may be relieved therefrom upon making application therefor in writing to the Franchise Tax Board and upon payment of the tax and the interest and penalties for nonpayment of which the suspension or forfeiture occurred, together with all other taxes, deficiencies, interest and penalties due under this part, and upon the issuance by the Franchise Tax Board of a certificate of revivor. . . ."

If the statute of limitations runs out prior to revival of a corporation's powers, the corporation's action will be time barred even if the complaint would otherwise have been timely. (*ABA Recovery Services, Inc.* v. *Konold, supra,* 198 Cal.App.3d at p. 725; *Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 843 [176 Cal.Rptr. 239]; *Welco Construction, Inc.* v. *Modulux, Inc., supra,* 47 Cal.App.3d at p. 74; see generally, Annot., *Reinstatement of Repealed, Forfeited, Expired, or Suspended Corporate Charter as Validating Interim Acts of Corporation* (1985) 42 A.L.R.4th 392, 443-445, § 23(b).) A corporation is so barred because, under section 23305a, the issuance of a certificate of revivor is "without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture." (Section 23305a; see *ABA Recovery Services, Inc.* v. *Konold, supra,* 198 Cal.App.3d at p. 725; *Welco Construction, Inc.* v. *Modulux, Inc., supra,* 47 Cal.App.3d at p. 74.)[2]

Here, Sade's corporate powers were suspended prior to filing its complaint against Oschin. Thus, the filing of the complaint was ineffective to commence the action or to toll the statute of limitations. The statute of limitations continued to run and the statutory period expired on September 14, 1984. Sade did not receive its certificate of revivor until April 10, 1987. Thus, its corporate powers were not technically revived until that time. (§ 23305.)

---

[2] Sade, relying upon *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351 [110 Cal.Rptr. 353, 515 P.2d 297], argues the filing of its complaint was a procedural step which was validated when the corporation was revived. This is incorrect. As the court stated in *Welco Construction, Inc.* v. *Modulux, Inc., supra,* 47 Cal.App.3d at page 73, the statute of limitations is not a procedural right but a substantive defense and not subject to revival. (See *Traub Co.* v. *Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 372 [57 Cal.Rptr. 846, 425 P.2d 790].)

Sade argues it substantially complied with the requirements necessary for revival when it paid the delinquent taxes and filed its return and Domestic Stock Statement. No court has considered whether substantial compliance with section 23305 is sufficient to permit the corporation to prosecute or defend its action where the certificate of revivor has not been issued.

However, the Supreme Court has considered the issue of substantial compliance in connection with an analogous statute. Business and Professions Code section 7031, subdivision (a) provides: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person, . . ."

In *Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564], the plaintiff, a contractor, sued the defendant for breach of contract based upon work the plaintiff performed for the defendant. The defendant argued Business and Professions Code section 7031 barred the action because the contractor's license expired during performance of the contract and was not renewed until after the job was complete. (*Id.* at p. 280.) The Supreme Court disagreed.

The court held that where a contractor has substantially complied with the licensing requirements, Business and Professions Code section 7031 would not operate to bar his action. (64 Cal.2d at p. 287; see *Asdourian* v. *Araj* (1985) 38 Cal.3d 276, 282-283 [211 Cal.Rptr. 703, 696 P.2d 95].) The Supreme Court noted the statute was intended to enforce the general provisions of the Contractors License Law (Bus. & Prof. Code, § 7000 et seq.) which was created to protect the public against incompetent workmanship. The court reasoned Business and Professions Code section 7031 should not be strictly applied to bar an action when the party seeking to avoid his obligations under the contract has received the full protection of the licensing statutes. (*Latipac, Inc.* v. *Superior Court, supra,* 64 Cal.2d at pp. 279-280.)[3]

While section 23301 and Business and Professions Code section 7031 are not identical, nor do they serve identical legislative purposes, they are anal-

---

[3]The Legislature, in 1989, chose to eliminate the doctrine of substantial compliance from Business and Professions Code section 7031 when it enacted subdivision (d) which provides: "The judicial doctrine of substantial compliance shall not apply to this section." This amendment, of course, does not alter the Supreme Court's reasoning concerning whether to apply the substantial compliance doctrine.

ogous. (See *Duncan* v. *Sunset Agricultural Minerals* (1969) 273 Cal.App.2d 489, 492 [78 Cal.Rptr. 339].) Both statutes are intended to compel compliance with certain legislative goals by removing a party's ability to commence an action until compliance has been met. (See *Asdourian* v. *Araj, supra,* 38 Cal.3d at p. 284; *Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 371 [105 Cal.Rptr. 29, 503 P.2d 285].) As to section 23301, the Legislature seeks to pressure delinquent corporations to pay their taxes by prohibiting them from acting as going concerns until the taxes, plus any penalties and fines, have been paid. (§ 23305; *Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co., supra,* 8 Cal.3d at p. 371; *Welco Construction Co.* v. *Modulux, Inc., supra,* 47 Cal.App.3d at p. 72.) This legislative goal is not furthered by strictly applying the enforcement statute to bar an action where the legislative goal was satisfied by substantial compliance. Indeed, courts have consistently viewed "a corporation's tax delinquencies, *after correction,* as mere irregularities." (*Welco Construction, Inc.* v. *Modulux, Inc., supra,* 47 Cal.App.3d at p. 72, italics added; accord *Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co., supra,* 8 Cal.3d at p. 371.)

There is an additional reason for applying the rule of substantial compliance to section 23301 which was not present under Business and Professions Code section 7031. Unlike the defense of section 7031, the plea of corporate suspension under section 23301 is considered a plea of abatement. (*Duncan* v. *Sunset Agricultural Minerals, supra,* 273 Cal.App.3d at p. 492; *Traub Co.* v. *Coffee Break Service, Inc., supra,* 66 Cal.2d at p. 370.) Pleas of abatement are not favored by law and should be strictly construed. (*Ibid.*) Since the defense of corporate suspension is disfavored, it is logical it should not be strictly applied where the corporate party has substantially complied with the requirements necessary for its revivor.

■ We therefore hold a corporation which has been suspended pursuant to sections 23301 and/or 23301.5 may nonetheless prosecute or defend an action prior to its official revivor provided there has been substantial compliance with the revival statute. The question remains, then, whether there has been substantial compliance here.

The test for substantial compliance under Business and Professions Code section 7031 was whether the contractor's substantial compliance with the licensing requirements satisfies the policy of the statute. (*Latipac, Inc.* v. *Superior Court, supra,* 64 Cal.2d at p. 281; *Asdourian* v. *Araj, supra,* 38 Cal.3d at p. 284.) Applying such a test here we see Sade has not satisfied the requirements necessary to constitute substantial compliance.

As we discussed above, the legislative intent underlying section 23301 is to pressure a corporation to pay its delinquent taxes. The revival statute

itself requires the suspended corporation to pay the tax and any interest and penalties for nonpayment of which the suspension or forfeiture occurred, together with all other taxes, deficiencies, interest and penalties due. (§ 23305.)

 Here, while Sade paid the taxes owed and obtained a partial waiver of the penalties, it continued to owe $90.85.[4] While this amount may appear nominal it is a significant percentage when compared to the $200 in delinquent taxes Sade owed.

More importantly, permitting Sade to proceed with its action without first requiring it to pay the *entire* outstanding balance would defeat the legislative goal of pressuring corporations to pay the money owing the state. There would be little the state could do to obtain this outstanding balance once Sade was permitted to revive its corporate powers without first obtaining its certificate of revivor.

Finally, the Secretary of State is empowered to suspend a corporation's powers for failing to pay any portion of the interest or penalties due. (See § 23301.) It is inconsistent with the statutory scheme to allow the corporation to avoid the suspension by claiming it substantially complied when it only paid the taxes owed.

In sum, when a corporation continues to owe money to the state, either for taxes, interest or penalties, there can be no substantial compliance. The trial court, therefore, properly held Sade's causes of action were barred.

II. *The Trial Court Properly Denied Sade's Request to Substitute Its Directors For The Corporation as the Plaintiffs in This Action.*

 Sade argues the trial court erred in denying its request to substitute Sade's directors as the plaintiffs in this action. We disagree.

Sade relies upon the opinion in *Kehrlein-Swinerton Con. Co.* v. *Rapken* (1916) 30 Cal.App. 11 [156 P. 972], as authority for permitting its directors to substitute as the plaintiffs in this action. In *Kehrlein,* the Court of Appeal permitted the directors of a corporation which had its charter suspended during the trial to substitute as plaintiffs. (*Id.* at p. 16.)

What Sade ignores, however, is the Court of Appeal held substitution is impermissible where it would affect a defendant's meritorious defense. (30 Cal.App. at p. 17.) That is exactly what would occur here if Sade's directors

---

[4] Sade states the $90.85 was for outstanding penalties and interest.

were permitted to substitute as plaintiffs for Sade since Oschin's statute of limitations defense would be defeated. Accordingly, the trial court properly denied Sade's motion to substitute its directors as plaintiffs in this action. (See *Cleveland* v. *Gore Bros., Inc.* (1936) 14 Cal.App.2d 681, 683 [58 P.2d 931].)[5]

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

---

[5] As Oschin correctly notes, *Kehrlein* is distinguishable from our case for an additional reason. In *Kehrlein,* the corporation was permitted to substitute its directors because the action could have been originally brought in their names as trustees of the corporation. (30 CalApp. at p. 16.) Sade made no showing here that its directors originally could have brought the action in their names.