[No. B152366. Second Dist., Div. Three. Oct. 31, 2002.]

LEASEQUIP, INC., et al., Plaintiffs and Appellants, v.
PHILIP D. DAPEER et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IV.D.

**COUNSEL**

Law Offices of Daniel B. Spitzer and Daniel B. Spitzer for Plaintiffs and Appellants.

Nemecek & Cole, Jonathan B. Cole and Julie A. Covell for Defendants and Respondents.

**OPINION**

**ALDRICH, J.—**

## I.   INTRODUCTION

Appellant and plaintiff Leasequip, Inc., a California Corporation, formerly known as Prudential Capital Corporation (Leasequip), appeals from an order of dismissal entered in favor of respondents and defendants Philip D.

Dapeer, and Dapeer & Hirsch, a law corporation, a California corporation, formerly known as George & Dapeer, a law corporation (collectively referred to as Dapeer), upon sustaining Dapeer's demurrer without leave to amend.

In the published portions of this opinion (pts. I., II., III., IV. A., B., C., V., and VI.) we answer "yes" to the following question: Is an attorney equitably estopped from asserting the statute of limitations defense in a legal malpractice lawsuit when the attorney advises the corporate client that the failure to comply with required corporate formalities will have no negative impact, the corporate client follows the attorney's advice and does not comply with required corporate formalities, and the statute of limitations expires because the corporation fails to comply with corporate formalities?

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   *The underlying facts.*

Leasequip was in the business of equipment leasing and finance. Appellant and plaintiff Jonathan Lampel (Lampel) was the sole shareholder, officer, and director of Leasequip. Prior to 1981, Leasequip hired Dapeer to render legal services in connection with numerous matters.

In 1994, Bank of America refused to furnish an accounting of the monies it had extended or received, by way of credits, on behalf of Leasequip. Dapeer advised Leasequip it could not file a corporate tax return, because to do so without accurate information could subject it and Lampel to fines and Lampel to imprisonment for filing false tax returns. Dapeer also advised that Leasequip need not observe any normal corporate formalities, including, among other things, maintaining corporate minutes or filing the statement of information required by Corporations Code section 1502. Dapeer advised that the failure to observe these "mere formalities" would result in the corporation being suspended, but that it could be renewed by merely paying the back taxes at any time, without affecting any of the corporation's business or legal claims. This advice was rendered periodically from 1994 to April 8, 1999. Dapeer also advised that Lampel could prosecute any legal claim Leasequip might have in his own name. Dapeer's true motive in furnishing this advice was to render it legally impossible for Leasequip to pursue claims against Dapeer at a later time.

---

[1]This matter comes to us upon the sustaining of a demurrer without leave to amend. Thus, we accept as true the facts alleged in the pertinent complaint, as well as those facts of which we take judicial notice. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300-310 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

On October 23, 1997, Dapeer returned the legal files on 14 separate litigation matters to Leasequip. These 14 matters had ended in one way or another prior to October 23, 1997. However, Dapeer continued to represent Leasequip in two other litigation matters, the Partnership Liquidity actions and the Bank of America action.[2] Other than in these two litigation matters, Dapeer ended his attorney-client relationship with Leasequip on October 23, 1997.

On July 16, 1998, Leasequip was suspended by the Secretary of State for the failure to file the statement of information required by Corporations Code section 1502. (Corp. Code, §§ 1502, 2205, 2206.)

Dapeer continued to prosecute and defend Leasequip in the Partnership Liquidity actions and the Bank of America action. Dapeer continued to advise Leasequip that it need not observe any normal corporate formalities, and advised that Lampel could legally prosecute or defend, in his own name, any legal claim which Leasequip may have had or which was brought against it.

On April 8, 1999, Dapeer procured court orders permitting him to withdraw from representation with regard to the two matters for which he was attorney of record, the Partnership Liquidity actions and the Bank of America action.

### B. The legal malpractice lawsuit and demurrer.

On October 22, 1998, Leasequip and Lampel filed this lawsuit against Dapeer. A first amended complaint was filed.[3] Dapeer successfully demurred. A second amended complaint was filed. The second amended complaint alleged Dapeer was liable for wrongful acts and omissions arising from the attorney-client relationship. All three causes of action (breach of oral contract, legal malpractice, and breach of fiduciary obligations) were grounded in allegations of legal malpractice.

The second amended complaint delineated facts relating to the 14 cases. These cases were those whose files Dapeer had transferred to appellants on

---

[2]For simplicity, we refer to *Buckel v. Partnership Liquidity Exchange* (Super. Ct. San Diego County, No. 685 138) and its related Los Angeles Superior Court case, *Partnership Liquidity Exchange v. Dapeer* (Super. Ct. L.A. County, No. SC 043 080), collectively as "the Partnership Liquidity actions." We refer to *Lampel v. Bank of America* (Super. Ct. L.A. County, No. BC 166 815) as "the Bank of America action."

*Leasequip, Inc. etc. v. Paul Lewis, etc. et al.* (Mun. Ct. L.A. County, No. 95 K 18931) was mentioned in some of the pleadings. At oral argument the parties agreed that the allegations of malpractice with regard to this municipal court case were not being pursued.

[3]The first amended complaint was filed on November 20, 2000. It and the second amended complaint alleged facts that occurred after the initial complaint was filed.

October 23, 1997. In these 14 matters, Leasequip (or its predecessor in interest Prudential Capital Corporation) was either the plaintiff or defendant in a litigation matter. There were allegations that because of Dapeer's negligence, omissions, or misrepresentations, Leasequip was damaged. The allegations of legal malpractice included accusations that Dapeer had failed to secure Leasequip's position as a secured creditor, failed to request a trial de novo after losing an arbitration, failed to seek attorney fees, failed to obtain a writ of possession, failed to obtain authorization before settling a case, failed to respond to discovery requests, failed to make court appearances, and failed to take collection efforts. There were numerous allegations that due to Dapeer's misrepresentations about the status of these cases, Leasequip was foreclosed permanently from protecting itself or from collecting monies owed to it. Each of the 14 cases had ended by the time the files had been returned to Leasequip on October 23, 1997.

The second amended complaint also alleged Dapeer had negligently handled the Bank of America action and the Partnership Liquidity actions. At the time the original complaint was filed, these two litigation matters were still pending and Dapeer was still the attorney of record.

Dapeer demurred to the second amended complaint. Dapeer divided the allegations of legal malpractice into two groups: (1) the "accrued" claims, i.e., allegations relating to the cases that had ended by the time the complaint was filed on October 22, 1998, and (2) the "pending" claims, the Partnership Liquidity actions and the Bank of America action. Dapeer argued the following: (1) the accrued claims were barred by the statute of limitations because Leasequip's corporate powers were suspended when the lawsuit was filed and the corporate powers had been revived after the statute had expired; (2) the pending claims were either premature or time-barred, or no damages could be proven; and (3) Lampel, individually, could not assert Leasequip's corporate causes of action.

In opposing the demurrer, Leasequip did not dispute that its corporate powers had been suspended on July 16, 1998, but demonstrated that as of September 13, 1999, its corporate powers had been revived.

The trial court sustained the demurrer without leave to amend. An order of dismissal was entered, from which Leasequip and Lampel appealed.

During the pendency of the action, Dapeer filed a *separate* lawsuit (*Dapeer & Hirsch v. Leasequip, Inc.* (Super. Ct. L.A. County, 1999, No. BC209829)) for unpaid legal fees. This separate lawsuit was filed on May 4, 1999. Leasequip and Lampel were the named defendants. Among other

allegations, Dapeer alleged Lampel was responsible for Leasequip's debts as the corporation's alter ego. Dapeer sought more than $400,000 in unpaid legal fees. It appears Dapeer's case for unpaid legal fees is still pending.[4]

### III. ISSUES

The issue we address in the published sections of this opinion (pts. I., II., III., IV. A., B., C., V., and VI.) relates to the suspension of Leasequip's corporate powers and the effect of the suspension on the statute of limitations. Dapeer contends the statute of limitations precludes Leasequip from pursuing its legal malpractice case against Dapeer with regard to the accrued cases. We hold that Dapeer is equitably estopped from asserting the statute of limitations with regard to the 14 accrued cases.

Lampel, individually, has also appealed. In the unpublished section of this opinion (pt. IV. D.), we reject Lampel's contention that he may assert Leasequip's corporate causes of action. In the unpublished section of this opinion, we also reject the argument that Leasequip may proceed with allegations relating to the two pending cases (the Partnership Liquidity actions and the Bank of America action).

### IV. DISCUSSION

#### A. *Standard of review—demurrer.*

■ " 'Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. Accordingly we assume that the complaint's properly pleaded material allegations are true and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context. [Citations.] We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law.' [Citation.]" (*People ex rel. Lungren v. Superior Court, supra,* 14 Cal.4th at pp. 300-301.)

■ " 'A demurrer on the ground of the bar of the statute of limitations will not lie where the action may be, but is not necessarily barred.' [Citations.] It must appear clearly and affirmatively that, upon the face of the complaint, the right of action is necessarily barred. [Citations.] This will not be the case unless the complaint alleges every fact which the defendant would be required to prove if he were to plead the bar of the applicable statute of limitation as an affirmative defense. [Citation.]" (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 881 [110 Cal.Rptr.2d 877].)

---

[4]Dapeer's separate lawsuit for unpaid legal fees is not before us.

### B. *Statute of limitations in legal malpractice cases.*

██    The statute of limitations in legal malpractice cases is contained in Code of Civil Procedure section 340.6. Pursuant to section 340.6, legal malpractice claims must be brought either *"one* year after actual or constructive *discovery,* or *four* years after *occurrence* (the date of the wrongful act or omission), whichever occurs first" (*Radovich v. Locke-Paddon* (1995) 35 Cal.App.4th 946, 966 [41 Cal.Rptr.2d 573]) unless these periods are tolled pursuant to the exceptions specified in the statute.

The tolling exceptions are contained in Code of Civil Procedure section 340.6, subdivision (a). Subdivision (a) provides: "In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action."

██    The parties do not discuss the four-year statue. They agree that the one-year statute of limitations contained in Code of Civil Procedure section 340.6 controls the disposition of this case. They also agree that since Leasequip's causes of action are grounded in legal malpractice, the statute of limitations found in section 340.6 is applicable to all three causes of action (breach of oral contract, legal malpractice, and breach of fiduciary obligation). (*Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 67-70 [72 Cal.Rptr.2d 359]; *Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362 [12 Cal.Rptr.2d 354].)

The parties further agree that with regard to the accrued cases, Leasequip had actual notice of injury on October 23, 1997, when Leasequip obtained the litigation files for these cases. The legal malpractice lawsuit was filed within one-year, as it was filed on October 22, 1998. However, on that date, Leasequip was a suspended corporation due to the failure to file the required statement of information. (Corp. Code, §§ 1502, 2205, 2206.) Leasequip's corporate powers were not revived until September 13, 1999, after the statute of limitations would have expired.

The first issue we address is the effect of the suspension on the statute of limitations with regard to the accrued cases.

## C. *The accrued cases.*

1. *The suspension of Leasequip's corporate powers and its effect upon the statute of limitations.*

Pursuant to Corporations Code section 1502 "[e]very corporation must update biennially the statement of general information that is required to be on file with the Secretary of State: i.e., names and addresses of directors and principal officers; number of vacancies on board; principal business activity; address of executive office; and designation of agent for service of process." (Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2002) ¶ 6:557, p. 6-110 (rev. #1 2001); *Palm Valley Homeowners Assn., Inc. v. Design MTC* (2000) 85 Cal.App.4th 553, 559 [102 Cal.Rptr.2d 350].)[5]

"If a corporation fails to file a statement under Corporations Code section 1502, fails to file a statement for 24 months, and has been assessed a penalty under Corporations Code section 2204 during the 24-month period, then the corporation is subject to suspension under Corporations Code section 2205." (*Palm Valley Homeowners Assn., Inc. v. Design MTC, supra,* 85 Cal.App.4th at p. 559; Friedman, Cal. Practice Guide: Corporations, *supra,* at ¶¶ 6:561 to 6:562, p. 6-111 (rev. #1 2001); Corp. Code, § 2205, subd. (a).) The Secretary of State notifies the corporation that its corporate powers will be suspended after an additional 60 days. "If the corporation fails to comply within 60 days, the Secretary of State certifies to the Franchise Tax Board that the corporation is suspended, and mails a notice to the suspended corporation. '[T]hereupon, except for the purpose of amending the articles of incorporation to set forth a new name, the corporate powers, rights, and privileges of the corporation are suspended.' (Corp. Code, § 2205, subd. (c).)" (*Palm Valley Homeowners Assn., Inc. v. Design MTC, supra,* 85 Cal.App.4th at p. 559.)

"Corporations Code section 2205, subdivision (c) makes clear that, 'except for the purpose of amending the articles of incorporation to set forth a new name,' the suspended corporation may transact no business of any kind." (*Palm Valley Homeowners Assn., Inc. v. Design MTC, supra,* 85 Cal.App.4th at p. 560.) Since "[c]onducting litigation is not 'amending the articles of incorporation to set forth a new name[,]' " (*ibid.*) corporations that have been suspended for failing to file the requisite information statement are "disabled from participating in litigation activities." (*Id.* at p. 556.)

---

[5]Leasequip's corporate powers were suspended on July 16, 1998. Prior to a 1999 amendment, Corporations Code section 1502 required annual, and not biennial, statements. (Stats. 1999, ch. 1000, § 20; *Palm Valley Homeowners Assn., Inc. v. Design MTC, supra,* 85 Cal.App.4th at p. 559, fn. 1.) This change in the statutory scheme does not affect our discussion.

In cases involving the suspension of a corporation as a result of the failure to pay taxes and fees (Rev. & Tax. Code, § 23301), courts have uniformly concluded that while the corporation's powers are suspended, the statute of limitations is not tolled. (*Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300 [87 Cal.Rptr.2d 358]; *Sade Shoe Co. v. Oschin & Snyder* (1990) 217 Cal.App.3d 1509, 1512-1513 [266 Cal.Rptr. 619]; *ABA Recovery Services, Inc. v. Konold* (1988) 198 Cal.App.3d 720, 724-725 [244 Cal.Rptr. 27].) "If the statute of limitations runs out prior to revival of a corporation's powers, the corporation's actions will be time barred even if the complaint would otherwise have been timely. [Citations.]" (*Sade Shoe Co. v. Oschin & Snyder, supra,* 217 Cal.App.3d at p. 1513.)

Dapeer borrows the rationale of these cases to argue that since the statute of limitations expired with regard to the accrued cases while Leasequip was a suspended corporation, the statute was not cured by the subsequent revival. For purposes of discussion, we accept Dapeer's argument that the same rules apply to a corporation suspended for the failure to file the required statement of information. Accepting this argument, the statute of limitations would have expired with regard to the accrued cases.

However, even if the one-year statute of limitations expired with regard to the accrued cases, our discussion does not end.

   2.   *Dapeer is equitably estopped from asserting the statute of limitations defense with regard to the accrued cases.*

Leasequip contends that Dapeer is equitably estopped from asserting the statute of limitations. This contention is persuasive

   a.   *Dapeer is estopped.*

"[E]quitable estoppel is not a punitive notion, but rather a remedial judicial doctrine employed to insure fairness, prevent injustice, and do equity. It stems from the venerable judicial prerogative to redress unfairness in the application of otherwise inflexible legal dogma, based on sound public policy and equity. [Citation.]" (*Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260, 1270 [84 Cal.Rptr.2d 552].)

" '[E]stoppel is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts. [Citations.]' [¶] 'Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be

acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury.' [Citation.] [¶] The doctrine of estoppel has been codified in Evidence Code section 623: 'Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.' " (*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54, 59 [35 Cal.Rptr.2d 515].)

Here, the legal malpractice lawsuit was timely when filed. The only reason Leasequip was foreclosed from pursuing its legal malpractice case against Dapeer with regard to the accrued cases, was that at the time the lawsuit was filed, Leasequip was a suspended corporation, having failed to comply with requisite corporate formalities, and Leasequip's powers were not revived until after the statute expired. However, it was Dapeer who advised Leasequip that compliance with corporate formalities was not required, that any problems stemming from a lack of compliance could be rectified, that the failure to file the statement of information would not affect Leasequip's legal claims, and that Lampel could pursue Leasequip's causes of action against others.[6] These facts, if proven true, establish a classic case of estoppel: Dapeer, an attorney, rendered legal advice; Dapeer intended this advice to be relied upon or Leasequip had a right to believe Dapeer intended the advice to be relied upon; Leasequip was ignorant of the true facts as it was unaware of the legal ramifications of the failure to file the appropriate documents; and Leasequip relied on Dapeer's advice as its attorney to its detriment.

---

[6]Dapeer notes that Leasequip's first amended complaint alleged that Dapeer's erroneous legal advice related *only* to the failure to pay corporate taxes, that Leasequip's corporate powers were actually suspended for the failure to file the statement of information, and that only after the trial court sustained the demurrer to the first amended complaint did Leasequip insert allegations that Dapeer had provided erroneous legal advice with regard to failing to file the statement of information. Dapeer argues that in order to avoid demurrer, plaintiffs may not "discard factual allegations of a prior complaint, or avoid them by contradictory averments, in a superseding, amended pleading. [Citation.]" (*California Dental Assn. v. California Dental Hygienists' Assn.* (1990) 222 Cal.App.3d 49, 53, fn. 1 [271 Cal.Rptr. 410]; accord, *Hendy v. Losse* (1991) 54 Cal.3d 723, 742-743 [1 Cal.Rptr.2d 543, 819 P.2d 1] [plaintiffs cannot cure defective pleadings by omitting allegations without explanation].) "[I]nconsistencies with prior pleadings must be explained[.]" (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946 [29 Cal.Rptr.2d 669].) This rule is designed to prohibit plaintiffs from filing sham pleadings to avoid demurrers. (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 945-946 [65 Cal.Rptr.2d 777].) However, the rule was not intended to preclude plaintiffs from providing additional and noncontradictory allegations. Here, the allegations in the second amended complaint amplified, but did not contradict, those in the first amended complaint. We cannot conclude the second amended complaint was a sham.

Dapeer, who rendered legal services to Leasequip for close to 20 years and continued to represent Leasequip even though its corporate powers had been suspended, cannot claim that the statute of limitations expired when reliance upon his advice led to the statute expiring. To hold otherwise would be unacceptable as it would permit Dapeer to hide behind his own erroneously rendered legal advice.

Dapeer is estopped from asserting the statute of limitations defense with regard to the 14 accrued cases.

b. *Prior case law does not convince us otherwise.*

Dapeer points to *Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972 [83 Cal.Rptr.2d 119] (*Gordon*), to contend that the principle of equitable estoppel may not be used to toll the legal malpractice statute of limitations in Code of Civil Procedure section 340.6. However, neither *Gordon,* nor the authority upon which it relies, undermines our conclusion. *Gordon* discusses *tolling;* we are addressing *equitable estoppel.*

*Gordon* held that the doctrine of equitable tolling does not apply to Code of Civil Procedure section 340.6. (*Gordon, supra,* 70 Cal.App.4th at p. 974.) *Gordon* reasoned as follows. Section 340.6, subdivision (a) states in part that "*In no event shall* the time for commencement of legal action exceed four years except that the period shall be tolled during the time" of the four enumerated provisions. (Italics added.) In *Laird v. Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691] (*Laird*), the Supreme Court examined section 340.6 and spoke to the exclusivity of the tolling provisions by stating: "Section 340.6, subdivision (a), states that 'in no event' shall the prescriptive period be tolled except under those circumstances specified in the statute. Thus, the Legislature expressly intended to disallow tolling under any circumstances not enumerated in the statute." (*Laird, supra,* at p. 618; cited in *Gordon, supra,* at p. 979.)[7]

In reaching its conclusion that the doctrine of equitable tolling may not extend the legal malpractice statute of limitations (*Gordon, supra,* 70 Cal.App.4th at p. 974), *Gordon* also relied upon *Bledstein v. Superior Court*

---

[7] Other cases have also cited the quoted language from *Laird, supra,* 2 Cal.4th at page 618 for the proposition that other than the exceptions enumerated in Code of Civil Procedure section 340.6, the legal malpractice statute of limitations, cannot be tolled or extended. (E.g., *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 757-758 [76 Cal.Rptr.2d 749, 958 P.2d 1062]; *Fantazia v. County of Stanislaus* (1996) 41 Cal.App.4th 1444, 1452 [49 Cal.Rptr.2d 177]; *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 224 [31 Cal.Rptr.2d 525]; *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (2002) 95 Cal.App.4th 709, 725 [116 Cal.Rptr.2d 497].)

(1984) 162 Cal.App.3d 152 [208 Cal.Rptr. 428] (*Bledstein*). *Bledstein,* a case predating *Laird, supra,* 2 Cal.4th 606, had held that the tolling provisions in Code of Civil Procedure section 340.6 are exclusive. (*Bledstein, supra,* at p. 160.)[8]

We do not disagree with the analysis of *Gordon, supra,* 70 Cal.App.4th 972—the tolling provisions of Code of Civil Procedure section 340.6 are exclusive. Only the exceptions enumerated in subdivision (a) of section 340.6 can be used to toll or extend the statute.

However, neither *Gordon, Laird,* nor *Bledstein,* nor the language of Code of Civil Procedure section 340.6 ("In no event . . .") assists Dapeer. We are not suggesting that equity will *toll* or *extend* the one-year statute of limitations in section 340.6. Rather, we conclude that Dapeer is *equitably estopped* from asserting the statute. He is foreclosed from arguing that the statute of limitations precludes Leasequip's legal malpractice case.

Although courts frequently discuss "equitable tolling," the concepts of equitable estoppel and tolling are distinct.

*Battuello v. Battuello* (1998) 64 Cal.App.4th 842 [75 Cal.Rptr.2d 548] (*Battuello*) addressed a similar situation. *Battuello* examined whether parties could be equitably estopped from asserting the statute of limitations in Code of Civil Procedure section 366.2.[9] The pertinent subdivision of section 366.2 stated: "The limitations period provided in this section for commencement of an action is not tolled or extended for any reason."[10] (*Battuello, supra,* at p. 847.) *Battuello* held that the trial court incorrectly had concluded the quoted statutory language prevented the application of equitable estoppel principles. (*Id.* at p. 848.)

*Battuello* reasoned as follows: "While section 366.2 clearly states that the one-year statute of limitations set forth therein may not be 'tolled' or 'extended,' it says nothing about equitable estoppel. The doctrines are

---

[8]*Bledstein, supra,* 162 Cal.App.3d at pages 161-175 further held that by enacting subdivision (a)(4) of Code of Civil Procedure section 340.6 (legal disability exception), the Legislature intended to incorporate the general legal disability tolling provision of Code of Civil Procedure section 352.

[9]Code of Civil Procedure section 366.2 concerns situations in which a person against whom action may be brought has died.

[10]*Battuello, supra,* 64 Cal.App.4th 842 addressed Code of Civil Procedure section 366.2 in effect at the time the appellate opinion was filed. In 1998, the Legislature amended section 366.2. (Stats. 1998, ch. 581, § 1.) The pertinent part of this section presently reads: "The limitations period provided in this section for commencement of an action shall not be tolled or extended for any reason except as provided in any of the following where applicable: . . . ."

distinct. As one court noted in a similar context, 'Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended. These are matters in large measure governed by the language of the statute of limitations itself . . . . Equitable estoppel, however, is a different matter. It is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. Its application is wholly independent of the limitations period itself and takes its life, not from the language of the statute, but from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice. Thus, because equitable estoppel operates directly on the defendant without abrogating the running of the limitations period as provided by statute, it might apply no matter how unequivocally the applicable limitations period is expressed.' [Citation.] [¶] . . . '[C]ourts should not presume the Legislature intended "to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." [Citations.] The Legislature could have easily stated it intended to abrogate long-established equitable principles. It did not do so.' [Citations.] [¶] We reach the same conclusion here. While section 366.2, subdivision (a)(2) clearly shows the Legislature intended that the statute of limitations set forth therein not be 'tolled' or 'extended,' the statute says nothing about equitable estoppel. In the absence of such language, or legislative history suggesting that was what the Legislature intended . . . , we conclude the doctrine still applies." (*Battuello, supra,* 64 Cal.App.4th at pp. 847-848.)

We have examined the legislative history of Code of Civil Procedure section 340.6, of which we have taken judicial notice. (Evid. Code, § 452, subd. (c); *People v. Muszynski* (2002) 100 Cal.App.4th 672, 681, fn. 15 [122 Cal.Rptr.2d 764].) Neither this history, nor any history cited by Dapeer, demonstrates a legislative intent to abandon the long-established policy of equitable estoppel.

Further, the Legislature could not have intended the legal malpractice statute of limitations to prevent Leasequip from proceeding in this case. The Legislature could not have intended to create such a trap for clients who follow the advice of their attorneys. Dapeer is seeking to hide behind a situation he created. Attorneys may not use their own advice to bind a client's hands and then beg for protection when the client cannot open the courthouse doors.

Dapeer is equitably estopped from asserting that the statute of limitations expired with regard to the accrued cases.

D. *Lampel and the pending cases.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V. CONCLUSION

With regard to Leasequip's allegations relating to the 14 accrued cases, the trial court erred in sustaining the demurrer without leave to amend. The trial court correctly ruled that Leasequip's allegations relating to the two pending cases may not go forward. With regard to Lampel, the trial court did not err in sustaining the demurrer without leave to amend.

## VI. DISPOSITION

As to Leasequip, the order of dismissal is reversed and on remand, the trial court is directed to overrule the demurrer and to hold further proceedings in accordance with the views expressed herein. The order of dismissal is affirmed with regard to Lampel. Dapeer is to pay costs on appeal.

Klein, P. J., and Croskey, J., concurred.

A petition for a rehearing was denied November 26, 2002, and respondents' petition for review by the Supreme Court was denied January 15, 2003.

---

*See footnote, *ante*, page 394.